1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

11

KENT HUXEL,

No. 4:12-CV-05135-JTR

12
                    Plaintiff,

13

v.

14

CAROLYN W. COLVIN,

15

Commissioner of Social Security,

16
17

                    Defendant.

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

18

19    BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF

20    No. 15, 17.  Attorney D. James Tree represents Kent Huxel (Plaintiff); Special

21    Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of

22    Social Security (Defendant).  The parties have consented to proceed before a

23    magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs

24    filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment

25    and **DENIES** Defendant's Motion for Summary Judgment.

26                              **JURISDICTION**

27    Plaintiff filed a prior application for Supplemental Security Income on

28    February 2, 2005, alleging disability beginning on May 10, 2002.  Tr. 14.  The

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

claim was denied initially and on reconsideration, and the case was eventually heard by Administrative Law Judge Riley J. Atkins.  Tr. 14.  On June 18, 2008, ALJ Atkins found Plaintiff was not disabled, the Appeals Council affirmed the decision and Plaintiff did not appeal.  Tr. 14; 78-87.

On February 19, 2009, Plaintiff filed a second application for Social Security Supplemental Income, alleging disability beginning June 19, 2008.  Tr. 14; 168.  Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ).  Tr. 14; 91-163.   A hearing was held on April 8, 2011, in Portland, Oregon, and ALJ Riley J. Atkins again presided.  Tr. 31.  At the hearing, Plaintiff, who was represented by counsel, appeared and testified.  Tr. 31-43.  Vocational expert Gary Jasky was also present at the hearing, but the ALJ did not allow him to testify.  Tr. 42.  The ALJ denied benefits on April 21, 2011.  Tr. 14-24.  The Appeals Council denied review.  Tr. 1-3.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 30 years old and lived with his mother in Dallasport, Washington.  Tr. 33-34; 168.  Plaintiff graduated from high school and completed a certification program at the Business Computer Training Institute in Vancouver.  Tr. 50.

Plaintiff's past work includes data entry, sorting cherries, working as a proof operator processing checks, and he started a small business that consisted of maintaining several gumball machines at various locations.  Tr. 50-52; 68.

Plaintiff testified that a normal day consists of getting dressed, eating, playing computer games, watching television and running errands.  Tr. 39-40.  Plaintiff also testified that he spends four to five hours per day on the computer.  Tr. 35.  He commented that he gets angry at the computer if it does not work properly, and he gets "combative … towards the peripherals of the computer.  I've

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

damaged a couple of mice, beyond repair and I've also damaged a CD drive."  Tr. 35.

Plaintiff described himself as an "introvert" and "paranoid in regards to the potential for a social pretrial."  Tr. 36.  Plaintiff explained that this means: "I expect people to betray me, to find something about me that they can take advantage of, so they can cause harm to me for their selfish benefit."  Tr. 36. Plaintiff said he bathes once a week, despite the fact his counselor has told him he needs to bathe more frequently.  Tr. 37.

In describing his social interactions, Plaintiff acknowledged that people might perceive his comments as inappropriate, and in order to avoid that, he said he will try to "pass as many comments as possible through various what I call social filters in my brain just to make sure that it[']s socially acceptable."  Tr. 38. Plaintiff said he does not have any friends and he does not socialize outside his family.  Tr. 38.

Plaintiff testified that he attends counseling appointments every other week, and he sees the doctor twice a year.  Tr. 34.  After Plaintiff's testimony at the hearing, counsel asked the ALJ if he could question the vocational expert.  Tr. 42. The ALJ responded, "No, there's no reason to call him."  Tr. 42.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

### ADMINISTRATIVE DECISION

As a preliminary issue, the ALJ noted that the doctrine of *res judicata* applies to years related to Plaintiff's prior denial of benefits, and a continuing presumption of non-disability exists in the current application for benefits. Tr. 14.

At step one, ALJ Atkins found that Plaintiff had not engaged in substantial gainful activity since February 19, 2009. Tr. 16. At step two, he found Plaintiff had the severe impairments of mild back pain, depression, and personality disorder. Tr. 17. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 17. The ALJ found the record does not establish Plaintiff's impairments have changed since the 2008 claim disposition. Tr. 17.

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work with the following limitations:

> He is limited to working alone, rather than part of a team. He is able to engage in brief, social interactions with his coworkers and supervisors. He also is restricted from work requiring interaction with the general public and is precluded from performing work in proximity to minor children.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

Tr. 18.  The ALJ concluded that Plaintiff's additional limitations had little or no effect on the occupational base of unskilled medium work.  Tr. 24.  At step four, the ALJ found that Plaintiff could perform past relevant work as a data entry clerk and proof operator.  Tr. 23.  At step five, the ALJ concluded that notwithstanding Plaintiff's ability to perform past work, considering his age, education, work experience, and residual functional capacity, additional jobs exist in significant numbers in the national economy that Plaintiff can perform, such as hand packager, janitor, and small parts assembler.  Tr. 23-24. The ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.  Tr. 24.

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends that the ALJ erred by (1) rejecting medical evidence that established changes in Plaintiff's condition since his last filing; (2) finding Plaintiff had little credibility; (3) preventing counsel from examining the vocational expert; and (4) finding Plaintiff could perform past relevant work when Plaintiff's previous work did not qualify as substantial gainful activity.  ECF No. 15 at 7.

## DISCUSSION

"The principles of *res judicata* apply to administrative decisions." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  Under *Chavez*, a final denial of disability benefits gives rise to a continuing presumption of non-disability; this presumption applies to a claimant's subsequent applications for benefits.  *Id.*; *see also Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) ("An ALJ's finding that a claimant is not disabled creates a presumption that the claimant continued to be able to work after that date.");  *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985);  20 C.F.R. § 404.957(c)(1).  A claimant can overcome this presumption by proving "'changed circumstances' that indicate a greater disability."  *Chavez*, 844

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

F.2d at 693; see also Social Security Acquiescence Ruling 97-4(9)("SSAR 97-4").[1]

Changes in age category, education, work, or medical or psychiatric condition can all qualify as "changed circumstances" sufficient to rebut the presumption.  SSAR 97-4(9); *Lester*, 81 F.3d at 827-28; *Chavez*, 844 F.2d at 693.

## A.    Medical Opinions

Plaintiff contends that the ALJ erred by finding he had not established a change in circumstances since his 2008 RFC.  ECF No. 15 at 8.  Plaintiff argues that the opinions from Joe Rinella, D.O., Kimberly Humann, M.D., Kari Heistand, M.D., and Candy Didier, LMHP, all establish his condition deteriorated, and the opinions were improperly rejected by the ALJ.  ECF No. 15 at 10-11.

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Lester*, 81 F.3d at 830.  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Id.*  Where the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

### 1.    Family Practitioner Joe Rinella, D.O.

Plaintiff contends that Dr. Rinella's evaluation established a change in Plaintiff's circumstances.  Plaintiff argues that Dr. Rinella's conclusion "psychiatric issues were prominent and would probably keep him [from] holding down gainful employment" was evidence that Plaintiff's condition had deteriorated and thus he was disabled.  ECF No. 15 at 9.  Defendant responds that Dr. Rinella's statements indicate his belief he was not qualified to offer an opinion about the limiting effects of Plaintiff's mental impairments, and thus his opinions were properly rejected.  ECF No. 17 at 6.

---

[1]http://www.socialsecurity.gov/OP_Home/rulings/ar/09/AR97-04-ar-09.html

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

On August 3, 2009, Dr. Rinella completed a Physical Evaluation form.  Tr. 414-17.  Dr. Rinella opined that Plaintiff's back pain would likely cause between mild and moderate interference with work based activities.  Tr. 416.  Dr. Rinella concluded Plaintiff could perform medium work.  Tr. 416.   He noted, "I expect that psychiatric issues are more of a [hindrance ] than physical issues."  Tr. 417.

On June 28, 2010, Dr. Rinella completed a second Physical Evaluation form.  Tr. 406-09.  In this visit, Dr. Rinella rated Plaintiff's low back pain as posing mild to moderate interference with Plaintiff's ability to work, and his social "phobia/depression" as posing moderate interference with Plaintiff's ability to work.  Tr. 408.  Dr. Rinella rated Plaintiff's overall work level as light to medium. Tr. 408.

Dr. Rinella offered several comments related to Plaintiff's mental impairments.  For example, Dr. Rinella commented that the treatment he recommended to improve Plaintiff's employability is continued psychiatric treatment, "probably [a] lifelong need (?)."  Tr. 409 *(punctuation in original)*.  Also, Dr. Rinella opined in both the form and treatment notes:

> I suspect that psychiatric issues are much more of a hinderance [sic] than physical limitation.
>
> …
>
> [h]is physical disability is minimal but the mental illness is a limiting factor…
>
> …
>
> His psychiatric issues seem prominent and would probably keep him from holding down gainful employment.  I am not qualified to adequately give prognostic information about these issues but I do recommend continued care by psychiatry and counseling.

Tr. 409-10; 413.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

1    While the ALJ failed to provide an explicit reason for rejecting Dr. Rinella's

2 opinion, the context implies it was because Dr. Rinella did not specialize in mental

3 health.  Dr. Rinella, Plaintiff's treating physician, is an osteopathic physician, and

4 his opinion regarding the severity of Plaintiff's mental health impairments was

5 outside his area of expertise.  While an ALJ may consider a doctor's area of

6 expertise in determining the weight a doctor's opinion should be given, the ALJ

7 may not reject a doctor's opinion regarding medical limitations solely on the

8 grounds they are outside the doctor's area of expertise.  See 20 C.F.R. §

9 404.1527(c)(2)(ii).  The SSA regulations provide that a treating doctor's opinion

10 will be considered, even if the subject of the opinion is outside the doctor's area of

11 expertise, and it is entitled to greater weight than the opinion from an examining

12 source:

13         For example, if your ophthalmologist notices that you have
14         complained of neck pain during your eye examinations, we will
         consider his or her opinion with respect to your neck pain, but we will
15         give it less weight than that of another physician who has treated you
         for the neck pain. When the treating source has reasonable knowledge
16         of your impairment(s), we will give the source's opinion more weight
17         than we would give it if it were from a nontreating source.

18

19 20 C.F.R. § 404.1527(c)(2)(ii).

20    The ALJ's opinion indicates that Dr. Rinella "noted he was not qualified to

21 adequately give prognostic information about this issue." Tr. 21.  The ALJ did not

22 provide any analysis or explanation about Dr. Rinella's observations of Plaintiff's

23 mental impairments.  The ALJ concluded that Dr. Rinella's opinions regarding

24 Plaintiff's "physical conditions are generally consistent with the record and are

25 given weight." Tr. 21.  The ALJ provided no conclusion related to the weight he

26 gave Dr. Rinella's opinions about Plaintiff's mental limitations.

27    In *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), the Ninth Circuit

28 recognized "it is well established that primary care physicians (those in family or

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

general practice) 'identify and treat the majority of American's psychiatric disorders.'" *Sprague*, 812 at 1232, quoting C. Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt, M.D., and H. Keith H. Brodie, M.D., *How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners,* 142: 1 Am. J. Psychiatry 52 (Jan. 1985).

As a result, Dr. Rinella's opinion regarding the severity of Plaintiff's mental limitations is entitled to greater weight than the opinions of examining and non-examining physicians. It appears that the ALJ gave little or no weight to Dr. Rinella's opinion about Plaintiff's mental impairments, and improperly gave "great weight" to one-time examiner Tom Dooley, PsyD. Tr. 22. Similarly, the ALJ improperly gave more weight to the opinions of the State agency psychological consultants who never examined Plaintiff than to Dr. Rinella's opinion. Tr. 23.

While the ALJ opinion fails to clearly define the weight he gave Dr. Rinella's opinions related to Plaintiff's mental limitations, it appears that the ALJ rejected these opinions based on Dr. Rinella's assertion he was not qualified to provide "prognostic" information. Tr. 21. Considering the record and present circumstances, the ALJ erred by failing to consider and give weight to Dr. Rinella's opinions that Plaintiff's mental limitations would likely prevent him from sustaining employment. As a result, remand is required for reconsideration of Dr. Rinella's opinion.

### 2.     Psychiatrists Kimberly Humann, M.D. and Kari Heistand, M.D.

Plaintiff argues that the respective diagnoses, GAF scores and treatment notes from Drs. Humann and Heistand reveal Plaintiff's condition deteriorated after his 2008 decision, and the ALJ erred by rejecting these opinions. ECF No. 15 at 11.

On November 17, 2008, Kimberly Humann, M.D., examined Plaintiff. Tr. 308-310. Dr. Humann noted that Plaintiff's therapists reported he had exhibited better grooming and was more positive and engaging in therapeutic work. Tr. 308.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

Dr. Humann also noted Plaintiff's speech was abnormally slow and minimally spontaneous, and his affect was congruent and constricted.  Tr. 308.  Dr. Humann observed that Plaintiff smiled more easily and appropriately than in the past, his judgment was fair, but he did "not have good insight into his own role in his problems."  Tr. 308.  Dr. Humann assessed Plaintiff with a GAF score of 50.  Tr. 310.

On February 12, 2009, as part of a medication management visit, Dr. Humann charted that  Plaintiff's "speech rate was slow" and "minimally spontaneous" and his "cognitive functions appeared to be at baseline."  Tr. 322-23. Dr. Humann diagnosed Plaintiff with major depressive disorder, recurrent, episodic-severe, and with an unspecified personality disorder.  Tr. 323.  Dr. Humann assigned Plaintiff a GAF of 50, and noted "[p]atient continues to be somewhat stagnant due to not much activity and victim mentality."   Tr. 323-24. Three months later, on May 7, 2009, Dr. Humann again noted Plaintiff "continues to be somewhat stagnant due to not much activity and victim mentality," and on this visit lowered Plaintiff's GAF score to 48.  Tr. 373.

Dr. Heistand examined Plaintiff on May 10, 2010, and June 21, 2010.  Tr. 447-55.  In May, Dr. Heistand noted Plaintiff's speech was somewhat slow, but he exhibited "good coherence" and his thought process was "still a bit vague at times but improved," he showed "no sign of formal thought disorder," his affect was "dysphoric but does smile at times, constricted."  Tr. 452.  The following month, Dr. Heistand noted that Plaintiff's thought process "continued to be a bit vague at times but [he shows] no sign of formal thought disorder" and his affect seemed "constricted," but was "a bit brighter than [at the] the last visit."  Tr. 448.   The chart notes from both visits reveal diagnoses of major depressive disorder, recurrent with episodes that are severe, and unspecified personality disorder.   Tr. 448-49; 452-54.  Dr. Heistand assigned Plaintiff a GAF score of 47 in May, and the following month lowered the GAF to 45, evidencing a decline in Plaintiff's

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

functioning.  Tr. 448-49; 452-54.

The ALJ gave these opinions limited weight with a summary conclusion:

There is little support in the record for Dr. Humann and Dr. Heistrand's GAF ratings for the claimant.  Although their reports do contain statements suggesting the claimant's reported mood and affect were atypical, these GAF scores are unsupported and contradicted by the record as a whole, the claimant's actual activities, and their own treatment records.

Tr. 22.

When providing reasons for rejecting opinion evidence, an ALJ should provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725.   The ALJ must do more than merely state conclusions, but instead must:  "set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  For example, it is insufficient for an ALJ to reject the opinion of a treating physician by merely stating, without more, that it is inconsistent with other evidence in the record.  *See Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). Inconsistency between doctors' opinions does not allow the ALJ to simply select one opinion based solely on the fact that an inconsistency exists, but instead the ALJ must address, explain and resolve the conflicting evidence by assigning weight to differing opinions based on cogent, specific, and legitimate reasons. *Morgan*, 169 F.3d at 603; *Reddick v. Chater*, 157 F.3d 715, 722, 725 (9th Cir. 1998).

In this case, the ALJ dismissed two treating psychiatrist opinions without providing a detailed, thorough summary of the facts, conflicting medical evidence, and without identifying Plaintiff's activities that the ALJ believed undermined the doctors' assessments.  The ALJ's rejection of these medical opinions was insufficient.  As a result, remand is required for proper analysis of these opinions.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

### 3.    Candy Didier, LMHP

Plaintiff complains that the ALJ erred by failing to discuss the opinion from Candy Didier, LMHP.  ECF No. 15 at 11.  Ms. Didier completed a Psychological/ Psychiatric evaluation form regarding Plaintiff on August 7, 2009.  Tr. 392-97.  In that form, Ms. Didier diagnosed Plaintiff with major depression, recurrent, severe without psychotic symptoms and personality disorder, NOS, and she assigned a GAF of 45.  Tr. 394.  She assessed Plaintiff with marked limitations in his abilities to interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting.  Tr. 395.  Ms. Didier indicated that, notwithstanding Plaintiff's impairments, he was "able to manage a small independent business of 20+ machines," although she noted Plaintiff said he was losing money in the business.  Tr. 395.  Ms. Didier also assessed Plaintiff with several moderate limitations in cognitive and social factors.  Tr. 395.  She estimated Plaintiff would be impaired between six and twelve months and she noted "[h]is legal status as a sex offender further impairs his ability to function socially and occupationally."  Tr. 396-97.

As Defendant points out, the ALJ's opinion likely mistakenly addressed Ms. Didier's evaluation in the paragraph related to Ms. Jurs.[2]  Tr. 21-22; ECF No. 17 at 10-11.  The ALJ noted Ms. Didier's opinion that Plaintiff cannot work due to his criminal history is irrelevant to the disability determination.  Tr. 22.  The ALJ also noted that this provider was not an acceptable medical source, but she could provide insight into the severity of Plaintiff's impairments.  Tr. 22.

The ALJ's opinion failed to address the portions of Ms. Didier's evaluation

---

[2]In the opinion, the paragraph addressing Ms. Jurs cited Exhibit B14F/6, which is the Psychological/Psychiatric Evaluation completed by Ms. Didier.  Tr. 21-22; 392-97.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

that indicated marked and moderate limitations.  On remand, the ALJ should specifically address Ms. Jurs' opinion and include a detailed analysis related to the weight assigned to the opinions provided therein, including the assessed limitations in the evaluation.

**B.    Credibility**

Plaintiff argues that the ALJ erred in finding him not credible.  ECF No. 15 at 13-14.  Defendant responds that the ALJ's credibility analysis properly focused primarily upon whether Plaintiff's testimony established changed circumstances, instead of relying upon the "usual credibility factors."  ECF No. 17 at 4.

"In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Comm'r of Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

As Plaintiff points out, the ALJ's credibility analysis contains a contradiction: the ALJ asserts no records exist to substantiate Plaintiff's twice-monthly counseling sessions, yet the ALJ also cites pages in the record that reflect those counseling sessions.  Tr. 20; ECF No. 15 at 14.  On remand, the ALJ should reexamine Plaintiff's credibility and provide a detailed analysis, supported by substantial evidence in the record.

**C.    Vocational Expert**

Plaintiff contends that the ALJ improperly denied his request to question the vocational expert.  ECF No. 15 at 15.  Plaintiff argues that vocational expert testimony was necessary because of the presence of Plaintiff's mental impairments.  ECF No. 15 at 15.  Defendant responds that because Plaintiff's RFC did not change, consulting a vocational expert was unnecessary because a vocational expert testified at Plaintiff's previous hearing.  ECF No. 17 at 12.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

An ALJ may rely on the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2 ("the Grids") to meet his burden at step five. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).   The Grids may be used only when they "accurately and completely describe the claimant's abilities and limitations." *Id.*  When non-exertional limitations are sufficiently severe as to significantly limit the range of work permitted by the claimant's exertional limitations, the Grids are inapplicable and consultation with a vocational expert is required.   *Id.*; *accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)  ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.").

In this case, Plaintiff presented medical evidence that arguably indicates his mental functioning deteriorated since 2008, and was sufficiently severe as to significantly limit the range of work he could perform.  The ALJ's refusal to allow counsel to question the vocational expert about how Plaintiff's current mental limitations affect his ability to sustain full time work was error.  On remand, the ALJ will allow counsel the opportunity to question a vocational expert and establish a record.

**D.    Past Relevant Work**

Plaintiff contends that the ALJ erred by finding Plaintiff had engaged in past relevant work, because his income for that work did not meet the threshold for "substantial gainful activity" ("SGA") as defined in the regulations.  ECF No. 15 at 15-16.  The Defendant responded that Plaintiff mistakenly relied upon the substantial gainful activity threshold for blind individuals, the proper threshold monthly amount in 2000[3] was $700, and Plaintiff met this amount by earning $885.60 per month.  ECF No. 17 at 13.  Defendant is correct, and as a result, the ALJ did not err in finding that Plaintiff's past relevant work met the substantial

---

[3]http://www.ssa.gov/oact/cola/sga.html.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

gainful activity threshold.

**E.    Remand**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ improperly evaluated the medical evidence, Plaintiff's credibility, and failed to allow vocational expert testimony, the case must be remanded to remedy the defects.

The selection of a new ALJ on remand is generally within the discretion of the Commissioner of the Social Security Administration. *Hartnett v. Apfel*, 21 F.Supp.2d 217, 222 (E.D.N.Y.1998) (*citing Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir.1993). Without making such an order, this court encourages the Commissioner to weigh whether the present case should be heard a third time by an ALJ who has twice ruled that Plaintiff is not disabled, while improperly weighing the testimony of some witnesses, and declining to call an expert who was present and requested by the Plaintiff.

**CONCLUSION**

The ALJ's decision is based on legal error. Remand is necessary for specific and proper evaluation of the medical evidence, Plaintiff's credibility, Plaintiff's residual functional capacity and to obtain vocational expert testimony related to the impact of Plaintiff's mental limitations.    The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**ECF No. 15**) is **GRANTED**.

2.    Defendant's Motion for Summary Judgment (**ECF No. 17**) is **DENIED**.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 16

3.   An application for attorney fees may be filed by separate motion. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED January 9, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 17